UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
INSURANCE COMPANY OF GREATER NEW YORK, :
:
                Plaintiff, :
: 23-CV-3577 (JMF)
       -v- :
: **MEMORANDUM OPINION**
KINSALE INSURANCE COMPANY, : **AND ORDER**
:
                Defendant. :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Insurance Company of Greater New York ("GNY") filed this lawsuit on or about March 31, 2023, in New York State court, against Defendant Kinsale Insurance Company ("Kinsale"). GNY seeks a declaration that Kinsale, which issued a commercial general liability policy to Nicko's Construction, Inc., ECF No. 28-1 (the "Kinsale Policy"), is obligated to defend GNY's insured, Gracie Corporation ("Gracie"), in a pending personal injury lawsuit (the "Underlying Action"). On April 28, 2023, Kinsale removed the case to this Court, invoking the Court's diversity jurisdiction, *see* ECF No. 1, and, a few days later, moved to compel arbitration of the parties' dispute, *see* ECF No. 8. Thereafter, GNY moved to remand the case on the ground that the case does not satisfy the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332. *See* ECF No. 12. For the reasons that follow, GNY's motion to remand is DENIED, and Kinsale's motion to compel arbitration is GRANTED.

## MOTION TO REMAND

      The Court begins with GNY's motion to remand. Pursuant to Title 28, United States Code, Section 1446, which sets forth procedures governing removal, removal based on diversity of citizenship is proper "if the district court finds, by the preponderance of the evidence, that the

amount in controversy exceeds the amount specified in section 1332(a)." *Id.* § 1446(c)(2)(B). Kinsale, as the removing party, "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000). To determine whether that burden has been met, courts first look to the plaintiff's complaint and then to the defendant's petition for removal. *Id.* On a motion to remand, "[i]f the pleadings are inconclusive as to the amount in controversy, the removing party may rely on, and the Court may consider, documents outside of the pleadings to determine the amount in controversy." *Scottsdale Ins. Co. v. Acceptance Indem. Ins. Co.*, No. 19-CV-7294 (RA), 2019 WL 6498316, at *2 (S.D.N.Y. Dec. 3, 2019) (citing *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010)); *see also Mehlenbacher*, 216 F.3d at 298 (remanding to the district court to allow for further briefing because the complaint and notice of removal were inconclusive as to the amount in controversy).

Measured against these standards, GNY's motion to remand fails because Kinsale has established that there is a "reasonable probability" that defense costs in the Underlying Action will exceed the $75,000 threshold. To be sure, the Complaint itself does not reference such a figure. *See* ECF No. 1-1. But it does allege that "GNY has paid, and likely will continue to pay, *substantial amounts of money in connection with the defense* of Gracie in connection with the Underlying Action." *Id.* ¶ 50 (emphasis added). And, more significantly, Kinsale submits the Verified Bill of Particulars served by the plaintiff in the Underlying Action, which reveals that he is seeking at least $4.5 million in damages based in part on injuries to his spine, shoulder, and knee, as well as lost future earnings; and alleges that he has had at least two surgeries, one on his spine and one on his shoulder. *See* ECF No. 28-4. Given that, it is likely, if not probable, that the defense of that action will require the retention of two, if not three, experts (one or two

medical experts and an expert in lost earnings) and that it will, almost certainly, cost more than $75,000. That is enough to support jurisdiction. *See, e.g.*, *Travelers Indem. Co. of Conn. v. Centex Homes*, No. 14-CV-217 (LJO) (GSA), 2014 WL 2002320, at *5 (E.D. Cal. May 15, 2014) ("Based on the parties' filings and the Court's review of parties' other related litigation (between each other and other parties), it is certainly possible (if not likely and probable) that the costs for Plaintiffs to defend [in the underlying] action will exceed $75,000."); *Travelers Cas. Ins. Co. of Am. v. Am. Home Realty Network, Inc.*, No. 13-0360 (SC), 2013 WL 1808984, at *5 (N.D. Cal. Apr. 29, 2013) (denying a motion to remand an insurance coverage action based on a finding that "[l]egal bills exceeding $75,000" in the underlying action were "likely").

In arguing otherwise, GNY contends that the Court is limited to the face of the Complaint and the Notice of Removal. *See* ECF No. 15 ("Pl.'s Remand Mem."), at 3. If that were correct, GNY's motion to remand would be on firm ground. After all, as noted, the Complaint does not specify the likely defense costs. And nor does the Notice of Removal, which focuses on the prospect that Kinsale could be required to indemnify Gracie in the Underlying Action — even though indemnification is not relief that GNY seeks in this case. *See, e.g.*, *Greater N.Y. Ins. Co. v. United Specialty Ins. Co.*, No. 20-CV-1083 (MKV), 2020 WL 3446690, at *2 (S.D.N.Y. June 24, 2020) (granting a motion to remand an insurance coverage action for failure to meet the amount-in-controversy requirement where, as here, the plaintiff did not "not seek . . . indemnification by Defendant for any eventual damages"). But GNY's argument is foreclosed by Second Circuit precedent, which provides that where "the pleadings are inconclusive," a court "may look to documents outside the pleadings [and] to other evidence in the record to determine the amount in controversy." *Yong Qin Luo*, 625 F.3d at 775; *accord United Food & Com. Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d

Cir. 1994). For that reason, the Court declines to rely on *Greater New York Insurance Co.*, an otherwise similar case on which GNY places heavy reliance, *see* Pl.'s Remand Mem. 3-4, as the court there (despite citing *Mehlenbacher*) erroneously limited its review to the complaint and notice of removal. *See* 2020 WL 3446690, at *2. In any event, *Greater New York Insurance Co.* is also distinguishable because the plaintiff in the underlying state litigation there was seeking only $180,000 and the removing defendant failed to establish more than a "mere 'possibility'" of defense costs exceeding $75,000. *Id.*

For the foregoing reasons, the Court concludes that the amount-in-controversy requirement for diversity jurisdiction is met. Because there is no dispute that the parties are diverse, it follows that GNY's motion to remand must be and is DENIED.

## MOTION TO COMPEL ARBITRATION

The Court turns, then, to Kinsale's motion to compel arbitration. The Federal Arbitration Act ("FAA") reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001). In light of that policy, it is well established that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Where, as in this case, a party refuses to arbitrate, a court's role is limited to determining "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996); *accord Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004).

4

In light of these standards, Kinsale's motion to compel arbitration must be and is granted. First, the Kinsale Policy contains a valid arbitration clause, which requires arbitration of "[a]ll disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a Named Insured, an insured, [or] an additional insured." Kinsale Policy 24.[1]  Second, the present action plainly falls within the scope of that provision, as GNY seeks a declaration that its insured, Gracie, is an "additional insured" under the Kinsale Policy with respect to the Underlying Action and, thus, entitled to coverage. *Id.* at 57, 60-61, 64-65.  And while GNY itself is not a signatory to the Kinsale Policy, it is nevertheless bound by the Policy's arbitration provision because it seeks to enforce other provisions of the Policy against Kinsale.  *See, e.g.*, *Mobile Real Estate, LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 479 (S.D.N.Y. 2020) ("Numerous courts have found that non-signatory parties are estopped from denying arbitration when they rely on or seek direct benefits under an agreement by, for example, bringing suit under that agreement."); *see also, e.g.*, *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (compelling non-signatory insurers to arbitrate because "[i]t is clearly established that an insurer-subrogee stands in the shoes of its insured" (internal quotation marks omitted)); *Scottsdale Ins. Co. v. Kinsale Ins. Co.*, 253 F. Supp. 3d 796, 803 (E.D. Pa. 2017) (same); *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp. 2d 182, 187 (E.D.N.Y. 2006) ("By seeking to enforce its indemnification rights as an additional insured under the policy, [the non-signatory party] must also be bound by its arbitration clause because it wishes to avail itself of the protection and direct benefits afforded by the policy.").

---

[1] References to the Kinsale Policy are to the page numbers automatically generated by the Court's Electronic Case Filing (ECF) system.

5

GNY's arguments to the contrary are without merit. First, it points to a "service of suit" provision in the Kinsale Policy, which provides that Kinsale "will submit to the jurisdiction of any court of competent jurisdiction" in the event it fails "to pay any amount claimed to be due." ECF No. 17 ("Pl.'s Arbitration Mem."), at 6; *see also* Kinsale Policy at 24. But that argument fails substantially for the reasons stated by the court in *Hudson Specialty Ins. Co. v. N.J. Transit Corp.*, No. 15-CV-89 (ER), 2015 WL 3542548 (S.D.N.Y. June 5, 2015), which involved a nearly identical "service of suit" clause. As the *Hudson Specialty Insurance* court explained, arbitration and service of suit clauses operate "in harmony, rather than in conflict with each other," as the service of suit clause applies when a party seeks to compel arbitration or enforce an arbitration award. *Id.* at \*6; *see also, e.g.*, *Travelers Ins. Co. v. Keeling*, No. 91-CV-7753 (JFK), 1993 WL 18909, at \*4 (S.D.N.Y. Jan. 19, 1993) (finding "little difficulty giving effect to the plain language of both [an arbitration clause and service of suit clause]"). Second, GNY contends that Kinsale waived its right to compel arbitration by delaying its request for arbitration and by repudiating coverage under the Policy. *See* Pl.'s Arbitration Mem. 6. But Kinsale's alleged pre-suit delay is not a basis to find waiver where, as here, it moved to compel arbitration a little more than a month after GNY filed suit and only days after its removal. *See, e.g.*, *Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015) (holding that there was no waiver where the party moved to compel arbitration one week after removal); *Builders Grp. LLC v. Qwest Commc'ns Corp.*, No. 07-CV-5464 (DAB), 2009 WL 3170101, at \*5 (S.D.N.Y. Sept. 30, 2009) (holding that there was no waiver where the party moved to compel arbitration two-and-a-half months after removal). And nothing precludes an insurer from denying coverage and later invoking an arbitration clause if the insured seeks to contest that decision. *See, e.g.*, *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Loc. 38*, 351 F.3d 43, 46 (2d Cir. 2003)

6

(determining that repudiation of a contract does not discharge the obligation to arbitrate); *see also, e.g.*, *Carpet et Cetera, Inc. v. Forde*, No. 06-CV-6993 (BSJ), 2006 WL 2959063, at *4 (S.D.N.Y. Oct. 16, 2006) ("[W]hether the [subsequent] conduct amounted to a complete repudiation of the Agreement such that [the plaintiff] was excused from its obligations to arbitrate, is a question properly answered by the arbitrators.").

For the foregoing reasons, Kinsale's motion to compel arbitration must be and is GRANTED.

## CONCLUSION

In sum, GNY's motion to remand is DENIED, and Kinsale's motion to compel arbitration is GRANTED. Additionally, because Kinsale requests a stay, *see* ECF No. 10, at 13, the action must be and is stayed pending resolution of the arbitration, *see* 9 U.S.C. § 3 ("[T]he court . . . , upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration . . . , *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." (emphasis added)); *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested."). That said, the Court sees no reason to keep the case open pending arbitration. Accordingly, the Clerk of Court is directed to terminate ECF Nos. 8 and 12 and to administratively close the case, without prejudice to either side moving by letter-motion to reopen the case **within thirty days of the conclusion of the arbitration proceedings.**

SO ORDERED.

Dated: November 15, 2023
New York, New York

_____
JESSE M. FURMAN
United States District Judge